UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 07-11204-DHW
                                                         Chapter 13
JERRY L. KEETON
YVONNE M. KEETON,

        Debtors.

MEMORANDUM OPINION

The debtors filed an objection to Claim #4 of General Electric Evandale Credit Union. The issue is whether a vehicle that secures a loan by the credit union to both debtors also secures the credit card liability of Jerry Keeton pursuant to a dragnet clause in the loan.

The objection came on for final hearing on February 4, 2008 after which the parties submitted briefs on the issues of law raised by the objection.

Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from the order of the United States District Court referring title 11 matters to the Bankruptcy Court. Further, because this objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B), the court's jurisdiction extends to the entry of a final order or judgment.

Undisputed Facts

In October 2001, Jerry Keeton established a credit card account with the credit union. A copy of the credit card agreement is not in evidence. However, it does not appear that the credit card obligation was secured by any property other than shares on deposit at the credit union. The credit card debt was the sole responsibility of Jerry Keeton.

In June 2003, Jerry Keeton and Yvonne Keeton obtained a $4,000 loan from the credit union secured by shares on deposit and a 1998 Chevrolet Venture Van. The security agreement states that the van also secures "any and all other liabilities of Debtor to Secured Party . . . now existing or hereafter arising." *See* Security Agreement, Doc. 41, Ex. A. The security agreement was signed by Jerry Keeton and Yvonne Keeton who hold joint title to the vehicle.

Advances were made to Jerry Keeton on the credit card account after the security agreement was executed. Both the credit card agreement and the vehicle loan were entered into in the state of Ohio.

Jerry Keeton and Yvonne Keeton filed a case under chapter 7 on March 22, 2004 (Case No. 04-10641) in which they reaffirmed the credit card and vehicle debts in a single reaffirmation agreement. The reaffirmation agreement recites that the credit card account is secured by "all shares on deposit at the Credit Union" and that the June 2003 loan is secured by a 1998 Chevrolet Venture as well as shares on deposit at the Credit Union. *See* Reaffirmation Agreement, Doc. 41, Ex. B. The debtors promised to pay "the remaining balance" of these loans "in accordance with all the terms and conditions thereof." *Id.* The debtors did not execute any new notes or security agreements in conjunction with the reaffirmation.

Jerry Keeton and Yvonne Keeton filed the instant chapter 13 case on August 31, 2007. The credit union filed a claim for the balance due on the credit card and vehicle debts. The debtors contend that the portion of the claim representing the credit card liability is not secured by the vehicle. The credit union contends that the credit card liability is secured by the vehicle pursuant to the dragnet clause in the loan.

Conclusions of Law

The court must look to state law to determine whether the vehicle secures the credit card obligation. Though federal law determines what

2

property constitutes property of the bankruptcy estate, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). Ohio law gives effect to dragnet clauses:

> A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles, or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant to commitment.

Ohio Rev. Code Ann. § 1309.204(C) (2001). The debtor argues that the vehicle cannot be security for the prior credit card debt under the dragnet clause because the agreements are between different parties.

This court has reached that holding in a case materially on all fours with the instant case. *See In re Yelverton*, 2007 WL 841393 (Bankr. M.D. Ala. March 19, 2007). In construing language identical to the Ohio statute, the court stated:

> Alabama law requires that the future advance or cross-collateralization clauses be between the same parties. In *Ex parte Chandler (In re First Southern Development v. Chandler)*, 477 So.2d 360 (Ala. 1985), the Court construing a future advance clause noted that "between the same parties" was the key to the enforceability of such provisions.

*Id.* at *3. The credit union contends that *Yelverton* is factually dissimilar from the instant case in three respects. First the credit union notes that in *Yelverton*, the creditor did not make any advances on the unsecured loan after the secured loan was made.

However, *Yelverton*, did not turn on that point, and the court fails to see how this fact is material. In *Yelverton*, the court did not hold that prior advances were excluded from the operation of the dragnet clause. The court held that the dragnet clause could not embrace the prior debt of only

3

one of the contracting parties.

Second, the credit union argues that because the vehicle is owned jointly, "the entirety of the Vehicle can be pledged by one owner to secure what may be determined to be his singular debt." *Creditor's Brief*, Doc. 42, p. 2. However, the issue is not whether a joint owner of a vehicle <u>may</u> grant a security interest in a vehicle to secure his singular debt. The issue is whether both owners have in fact done just that through nothing more than the operation of a generic dragnet clause.

Third, the credit union notes that Yvonne Keeton signed the reaffirmation agreement in the chapter 7 case. However, the reaffirmation agreement merely states that the credit card and vehicle debts will be repaid "in accordance with all the terms and conditions thereof." The debtors did not execute any new notes or security agreements in conjunction with the reaffirmation. Therefore, Yvonne did not become a co-maker of the credit card debt by signing the reaffirmation agreement. Neither did the vehicle suddenly and expressly become security for the credit card obligation by operation of the reaffirmation agreement. The terms of the original agreements control the obligations of the parties because no new agreements were executed.[1]

---

[1] In fact, the reaffirmation agreement states,

2. In October, 2001 Debtors executed and delivered to Creditor a certain Visa credit card application. Said account is secured by all shares on deposit at the Credit Union.

3. On or about June 11, 2003, Debtors executed and delivered to Creditor a certain Loan Agreement Note and Disclosure Statement in the total principal sum of Four Thousand and no/100 ($4,000.00) Dollars. Said account is secured by a 1998 Chevrolet Venture and all shares on deposit at the Credit Union.

Reaffirmation Agreement, Doc. 41, Ex. B. Therefore, the reaffirmation agreement itself acknowledges that the vehicle is security only for the vehicle loan and not

4

Ohio law controls this case. The creditor has not cited to any case law on point in Ohio. This court must, therefore, endeavor to predict how the Ohio Supreme Court would rule if presented with the question. *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1232 (11th Cir. 2003); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001).

Ohio's version of the Uniform Commercial Code controls this case. The Official Comment to § 1309.204 states the following: "Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law." *Official Comment*, ¶ 5.

The security agreement renders the vehicle security for the liabilities of "Debtor" to the credit union. "Debtor," as used in the agreement, refers to both Jerry Keeton and Yvonne Keeton. There is no indication that the parties intended the vehicle to secure the individual and separate obligations of either Jerry Keeton or Yvonne Keeton. The only intent is to secure their joint obligations.

The debtor cited in brief to *Wooding v. Cinfed Employees Fed. Credit Union*, 872 N.E.2d 959 (Ohio Ct. App. 2007), an Ohio appellate court decision. In that case, the credit union held a purchase money security interest in the plaintiff's automobile. The security agreement provided that the vehicle would also secure "all other obligations . . . now existing or hereafter arising with the credit union." *Id.* at 960. The plaintiff later established a credit card account with the credit union, and the bank contended that the vehicle secured the credit card account. The court disagreed and noted that "there was nothing in any of the documents . . . to indicate specifically that the car would secure the credit-card account. Under these circumstances, we conclude that there was no meeting of the minds with respect to the cross-collateralization of the automobile." *Id.* at 961.

*Wooding* represents perhaps a more narrow construction of the

---

for the credit card obligation.

5

statute than this court's decision in *Yelverton*, because the obligor in *Wooding* was the same on both the credit card and the vehicle loan. The primary factual difference between *Wooding* and *Yelverton* is that in *Wooding* the vehicle loan was made before the credit card account was established. The narrow construction expressed in *Wooding* indicates that the Ohio Supreme Court would hold consistent with *Yelverton*.[2]

In addition, the Ohio court would likely look to persuasive authority in other states interpreting similar or identical statutory language. One such authority is the decision in *Yelverton* based on identical statutory language in Alabama.

For the above reasons, the court concludes that the vehicle of Jerry and Yvonne Keeton does not serve as security for the credit card obligation of Jerry Keeton. A separate order will enter sustaining the objection to the claim.

Done this 10th day of March, 2008.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtors
   Michael D. Brock, Attorney for Debtors
   William B. Fecher, Attorney for GECU
   Curtis C. Reding, Trustee

---

[2] "Where the state's highest court has not spoken to an issue, a federal court 'must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" *Id*. (quoting *Insurance Co. of North America v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991).

6